## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION AT JACKSON

| | | |
|---|---|---|
| VICTORIA A. JACKSON, individually and as Surviving Wife of DANIEL A. JACKSON, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:15-cv-01180 |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| FORD MOTOR COMPANY, GOLDEN CIRCLE FORD, LINCOLN, MERCURY, INC., and STEVE MARSH FORD, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## FORD MOTOR COMPANY'S NOTICE OF REMOVAL

COMES Defendant FORD MOTOR COMPANY ("FORD") and, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1446(b) respectfully shows the Court:

**I.**     **BACKGROUND**

On June 29, 2015, Ford was served with a summons and Complaint, attached hereto as *Exhibit A*, in a case styled *Victoria A. Jackson, individually and as Surviving Wife of Daniel A. Jackson, Deceased v. Ford Motor Company, Golden Circle Ford, Lincoln, Mercury, Inc., and Steve Marsh Ford, Inc.*, Civil Action No. 15-CV-18 in the Circuit Court for Benton County, Tennessee.  Ford understands that Golden Circle Ford Lincoln, Inc. ("Golden Circle Ford Lincoln"), which was formerly known as Golden Circle Ford, Lincoln, Mercury, Inc., was served with process on May 27, 2015 and that Steve Marsh Ford, Inc. ("Steve Marsh Ford") was served with process on May 26, 2015.

## II.      **FACTUAL BACKGROUND**

Plaintiff's Complaint is based on a crash involving a 2012 Ford Focus (the "Focus") that occurred on May 20, 2014.  Compl. ¶ 13.  Plaintiff alleges that her decedent, Daniel A. Jackson, was driving the Focus when it "darted left across the center line into oncoming traffic" and struck a wrecker.  *Id.* at ¶¶ 13-14.  Mr. Jackson was killed in the crash, and Plaintiff alleges that she sustained "serious, permanent and life threatening injuries . . . ."  *Id.* at ¶ 15.

According to the Complaint, Mr. Jackson purchased the Focus from Golden Circle Ford Lincoln on July 5, 2012.  *Id.* at ¶ 8.  At some point after July 5, 2012 but before July 31, 2013, Mr. Jackson allegedly "experienced some difficulties with the [Focus's] transmission and took it to Golden Circle."  *Id.* at ¶ 10.  Thereafter, on July 31, 2013, Mr. Jackson "took the [Focus] to the service department at Steve Marsh Ford for service and repairs."  *Id.* at ¶ 11.  Plaintiff alleges that Steve Marsh Ford "returned the vehicle to Mr. Jackson after making repairs to the vehicle, including repairs to the transmission."  *Id.* at ¶ 12.  She does not, however, allege that either dealer serviced or repaired any component of the Focus's steering system.

In contrast, Plaintiff alleges that the Focus's electronic power assisted steering (EPAS) system caused the crash.  *Id.* at ¶ 16.  In fact, 22 pages of her Complaint—all paragraphs between Paragraph No. 16 and Paragraph No. 104—are copied and pasted from a putative class action complaint filed in the United States District Court for the Northern District of California over alleged defects in the EPAS systems of various Ford vehicles.  *Compare* Compl. *with* First Am. Compl. in *William Philips, et al. v. Ford Motor Co.*, Civil Action No. 5:14-cv-02989-LHK in the United States District Court for the Northern District of California, attached hereto as *Exhibit B*. At one point, Plaintiff copied so much of the class action complaint verbatim that she neglected to remove the paragraph numbering and references to footnotes from the class action complaint

when she copied and pasted the allegations.  *Compare* Compl. ¶ 61 with *Philips* Compl. ¶¶ 100-101.  Plaintiff's 38-page, 150-paragraph Complaint alleges no defect in the Focus or cause for the wreck other than alleged defects in the EPAS system.

This single defect allegation is important because there is no allegation in the Complaint that either Golden Circle Ford Lincoln or Steve Marsh Ford performed any service or repairs on the EPAS system.  In fact, testimony from employees of the dealers confirms that neither dealer serviced or repaired the EPAS system.  Steve Marsh performed only one repair on the Focus: a transmission repair in August, 2013.  Aff. of Carey Connell, attached hereto as *Exhibit C*, at ¶¶ 6, 9.  Steve Marsh Ford has performed no other service or repairs on the Focus.  *Id.* at ¶ 9.  This repair "had no effect on the [EPAS] system in the Focus."  *Id.* at ¶ 8.  "Mr. Jackson never complained to Steve Marsh Ford about any sort of steering problem in the Focus."  *Id.* at ¶ 7.

Plaintiff alleges that Mr. Jackson brought the Focus to Golden Circle Ford Lincoln before bringing it to Steve Marsh Ford.  Compl. ¶ 11.  In fact, Mr. Jackson previously worked as a service technician at Golden Circle Ford Lincoln and brought the Focus to Golden Circle Ford Lincoln a number of times for service or repairs.  *See generally* Aff. of William Henderson, attached hereto as *Exhibit D*.  Aside from work performed on the Focus by Mr. Jackson, Golden Circle Ford Lincoln serviced or repaired the Focus three times.  *Id.* at ¶ 6.  In January, 2013, Golden Circle Ford Lincoln "cleaned the outside of the Focus's engine and transmission."  *Id.* at ¶ 7.  In May, 2013, Golden Circle Ford Lincoln "updated the software in the Focus's powertrain control module and transmission control module.  These two computers do not control the Focus's power steering system, and the software update had no effect on the Focus's power steering system."  *Id.* at ¶ 8.  Finally, in October, 2013, Golden Circle Ford Lincoln "performed an oil and filter change on the Focus."  *Id.* at ¶ 9.  "Other than these three instances, Golden

Circle Ford has never performed any service or repairs on the Focus." *Id.* at ¶ 10.  And, "[n]one of the service or repairs that Golden Circle Ford performed on the Focus involved or had any effect on the Focus's steering system." *Id.* at ¶ 11.

## III.    BASIS FOR REMOVAL

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity exists between Ford, the only properly joined defendant, and Plaintiff and the amount in controversy exceeds $75,000.  For purposes of her individual claim, Plaintiff is a citizen of the State of Tennessee.  Compl. ¶ 2.  At the time of his death, Mr. Jackson was a citizen of the State of Tennessee.  *Id.* at ¶ 1.  Accordingly, Plaintiff is also a citizen of the State of Tennessee in her representative capacity as wrongful death beneficiary of Mr. Jackson.  28 U.S.C. § 1332(c)(2) (2015).  Ford is, and was at all times relevant to this case, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Michigan.  Accordingly, Ford is a citizen of the States of Delaware and Michigan for diversity purposes.  28 U.S.C. § 1332(c)(1) (2015).   Ford believes that both Golden Circle Ford Lincoln and Steve Marsh Ford are citizens of the State of Tennessee, but the Court must disregard their citizenship because they are fraudulently joined.   In her Complaint, Plaintiff prays for compensatory damages in the amount of $20,000,000 and punitive damages in the amount of $100,000,000, satisfying the amount in controversy requirement.  Compl. at Prayer for Relief.

## IV.    GOLDEN CIRCLE FORD AND STEVE MARSH FORD ARE FRAUDULENTLY JOINED

### A.  Fraudulent Joinder Standard

"[T]he right to remove [is] to be determined according to the plaintiff['s] pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *accord Riddle v. Lowe's Home Ctrs., Inc.*, 802 F. Supp. 2d 900, 904 (M.D. Tenn. 2011).   If the

complaint does not state a colorable claim against a defendant, then that defendant is fraudulently joined. "'[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 319 F.2d 172, 176 (5th Cir. 1968)). In evaluating this question, "[t]he court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (quoting *Walker v. Phillip Morris USA, Inc.*, 443 Fed. Appx. 946, 955-56 (6th Cir. 2011)). "In that context, the court may employ a summary-judgment-like procedure to examine affidavits and deposition testimony for evidence of fraud." *Gentek Building Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citations omitted). Here, the undisputed evidence from Golden Circle Ford Lincoln and from Steve Marsh Ford establishes that both Golden Circle Ford Lincoln and Steve Marsh Ford are fraudulently joined.

### B.    Golden Circle Ford Lincoln is Fraudulently Joined

In her Complaint, Plaintiff alleges that Mr. Jackson purchased the Focus from Golden Circle Ford Lincoln. Compl. ¶ 8. The Complaint does not clearly state whether Plaintiff asserts product liability claims against Golden Circle Ford Lincoln. To the extent that Plaintiff asserts product liability claims, the statutory seller defenses in the Tennessee Products Liability Act of 1978 (the "Products Liability Act"), Tenn. Code Ann. § 29-28-106, bar them.

Under the Products Liability Act, the term "seller" means "a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." Tenn. Code Ann. § 29-28-102(7) (2015). "Manufacturer," on the other hand, "means the designer, fabricator, producer,

compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102(4) (2015). Plaintiff does not allege that Golden Circle Ford Lincoln designed, fabricated, produced, compounded or assembled the Focus or its component parts. Golden Circle Ford Lincoln therefore is not a "manufacturer" of the Focus. Golden Circle Ford Lincoln does, however, qualify as a "seller" of the Focus. Plaintiff alleges that Ford is, among other things, "an automobile developer, designer, manufacturer, assembler [and] distributor . . . ." Compl. ¶ 4. Ford is a statutory "manufacturer" of the Focus.

Under the Products Liability Act, Plaintiff may not bring a product liability action against Golden Circle Ford Lincoln, a non-manufacturer "seller," unless she meets a statutory exception:

> No product liability action, as defined in [Section] 29-28-102, shall be commenced or maintained against any seller, other than the manufacturer, unless:
> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;
> (2) Altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;
> (3) The seller gave an express warranty as defined by title 47, chapter 2;
> (4) The manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or
> (5) The manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106 (2015). Plaintiff has not pled *any* facts that would establish even one of these exceptions. Without those facts, Plaintiff cannot recover on a product liability claim against Golden Circle Ford Lincoln.

The Products Liability Act is broad and covers all of the claims Plaintiff asserts against Golden Circle. It defines "product liability action" as

> [A]ll actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is

> not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn. Code Ann. § 29-28-102(6) (2015).  Plaintiff seeks recovery from Golden Circle Ford Lincoln on theories of strict product liability, negligent failure to warn, misrepresentation, breach of implied warranty, breach of express warranty and negligence.  Compl. at Counts I, II, III, VI, VII, VIII, IX and X.  The plain language of Section 29-28-102(6) encompasses each of these theories.

In the sole count of the Complaint that refers to Golden Circle Ford Lincoln specifically, Plaintiff alleges that Golden Circle Ford Lincoln "fail[ed] to properly diagnose and repair the defects in Mr. Jackson's 2012 Ford Focus."  *Id.* at ¶ 140(a).  The Products Liability Act also extends to this claim.  Consistent with the interpretation of many other courts, this Court has construed the Products Liability Act's definition of "product liability action" "broadly." *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 882 F. Supp. 2d 1020, 1028 and n.16 (W.D. Tenn. 2012) (collecting cases), *affirmed* 737 F.3d 378 (6th Cir. 2013).  That definition includes "actions based upon . . . service . . . of any product." Tenn. Code Ann. § 29-28-102(6) (2015). Because Plaintiff's claims against Golden Circle Ford Lincoln arise from service of the Focus, the Products Liability Act controls them.

Plaintiff's negligent repair claim also fails for lack of causation. Plaintiff does not and cannot explain how service on the Focus's transmission—even if negligently performed—could cause the unspecified defect in the EPAS system that she alleges caused the crash.  The Complaint explains that Mr. Jackson brought the Focus to Golden Circle Ford Lincoln for service after he "experienced some difficulties with the [Focus's] *transmission*."  Compl. ¶ 10

7

(emphasis added).  But, Plaintiff does not claim that the Focus's transmission caused the crash. Rather, she claims that "[t]he "EPAS" [system] was *the* cause of the Plaintiffs [sic] vehicle darting left into oncoming traffic." *Id.* at ¶ 16 (emphasis added).  The transmission, which helps control the forward and backward movement of the Focus, has nothing to do with the EPAS system, which helps control the side-to-side movement of the Focus.  Plaintiff alleges that the crash occurred because the "Focus darted left across the center line into oncoming traffic." *Id.* at ¶ 14.  In the Focus, like in most other vehicles, the transmission cannot cause a vehicle to "dart left."

It is undisputed that Golden Circle Ford Lincoln performed no service on the EPAS. Henderson Aff., ¶ 11.  It is also undisputed that Plaintiff's steering defect (or EPAS) allegations have no causal connection to work that Golden Circle Ford Lincoln performed on the Focus's transmission.  Plaintiff cannot recover against Golden Circle Ford Lincoln, and the Court must therefore find that Golden Circle Ford Lincoln is fraudulently joined.

### C.    Steve Marsh Ford is Fraudulently Joined

Plaintiff's claims against Steve Marsh Ford suffer from similar deficiencies to her claims against Golden Circle Ford Lincoln.  Plaintiff does not allege that Steve Marsh Ford manufactured or sold the Focus.  In fact, Steve Marsh Ford did not manufacture or sell the Focus. Connell Aff., ¶ 4.  Accordingly, Plaintiff may not maintain any product liability claim against Steve Marsh Ford.  "In order to recover [under the Products Liability Act], a plaintiff must show that the product manufactured and sold by the defendant proximately caused the injuries he alleges to have sustained." *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006) (internal quotation marks, alterations and citations omitted); *accord Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 737 F.3d 378, 404 (6th Cir. 2013).  When a product liability

defendant is "neither the manufacturer nor the distributor" of the allegedly defective product, dismissal is proper "on this basis alone." *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1053 (E.D. Tenn. 2007).

Like Plaintiff's claims against Golden Circle Ford Lincoln, Plaintiff alleges that Steve Marsh Ford "fail[ed] to properly diagnose and repair the defects in Mr. Jackson's 2012 Ford Focus." Compl. ¶ 140(a). Mr. Jackson complained to Steve Marsh Ford "that the transmission fell out of gear at times and made a noise." Connell Aff., ¶ 5. Steve Marsh Ford repaired the Focus's transmission. *Id.* at ¶ 6. Steve Marsh Ford did not repair the Focus's EPAS system. *Id.* at ¶¶ 8-9. Accordingly, the same lack of causation that dooms Plaintiff's negligent repair claims against Golden Circle Ford Lincoln also bars her claims against Steve Marsh Ford. *See supra* at 8.

## V.   FORD HAS MET ALL PROCEDURAL REQUIREMENTS FOR REMOVAL

This Notice of Removal is filed within 30 days of service of the Summons and Complaint on Ford. Ford attaches copies of the Answers of Steve Marsh Ford and Golden Circle Ford Lincoln as *Exhibits E* and *F*, respectively. Other than the Summons, Complaint and Answers, Ford has not been served with any other pleadings or papers in this case. Ford understands that the court file in the Circuit Court for Benton County, Tennessee contains the Complaint, the Answers, returns of service on each defendant and nothing else. A true copy of this Notice of Removal is concurrently filed with the Circuit Court for Benton County, Tennessee as required by 28 U.S.C. §1446(d). Because Golden Circle Ford Lincoln and Steve Marsh Ford are fraudulently joined, they need not consent to removal. 28 U.S.C. § 1446(b)(2)(A) (2015). Nevertheless, Ford has obtained the consent of Golden Circle Ford Lincoln and Steve Marsh

Ford and understands that they will file notices stating their consent to removal once the Clerk has fully opened this case in the Court's electronic case filing system.

WHEREFORE, Defendant Ford Motor Company gives notice that the action now pending against it in the Circuit Court for Benton County, Tennessee has been removed therefrom to this Court.

Dated this 22nd day of July, 2015.

Respectfully submitted,

LEWIS, THOMASON
KING, KRIEG & WALDROP, P.C.

By:/s/ Ryan N. Clark
J. Randolph Bibb, Jr., B.P.R. No. 09350
Robert F. Chapski, B.P.R. No. 22043
Ryan N. Clark, B.P.R. No. 29105
424 Church Street, Suite 2500
Post Office Box 198615
Nashville, Tennessee 37219
(615) 259-1366 (telephone)
(615) 259-1389 (facsimile)
rbibb@lewisthomason.com
rchapski@lewisthomason.com
rclark@lewisthomason.com

*Attorneys for Defendant*
*Ford Motor Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the forgoing Notice of Removal has been served upon the counsel for the parties in interest herein by United States Mail with sufficient postage thereon to carry the same to its destination:

Joe Bednarz, Sr., Esq.
Joe Bednarz, Jr., Esq.
100 Bluegrass Commons Boulevard
Suite 330
Hendersonville, Tennessee 37075

*Attorneys for Plaintiff*

Dated this 22nd day of July, 2015.

_____
Ryan N. Clark