IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VICTORIA A. JACKSON, individually,
and as Surviving Wife of DANIEL A.
JACKSON, Deceased,

    Plaintiff,

v.     No. 15-1180

FORD MOTOR COMPANY,
GOLDEN CIRCLE FORD, LINCOLN,
MERCURY, INC., and STEVE MARSH
FORD, INC.,

    Defendants.

_____

ORDER DISMISSING DEFENDANTS,
GOLDEN CIRCLE FORD, LINCOLN,
MERCURY, INC., and STEVE MARSH FORD, INC.,
BASED UPON FRAUDULENT JOINDER
_____

On May 20, 2015, Plaintiff, Victoria A. Jackson, as surviving spouse of Daniel A. Jackson, deceased, filed suit against Defendants, Ford Motor Company ("Ford"), Golden Circle Ford, Lincoln, Mercury, Inc. ("Golden Circle"), and Steve Marsh Ford, Inc. ("SMF"), in Benton County (Tennessee) Circuit Court for claims arising out of an automobile accident. (Docket Entry ("D.E.") 1-2.) Daniel Jackson's car, without warning, veered left into oncoming traffic, causing a collision which resulted in his death. (*Id.* at ¶ 14.) Plaintiff alleges that the accident was due to a defect in the Ford Focus, manufactured by Ford, that the deceased was operating. (*Id.* at ¶ 16.) The decedent purchased the car from Golden Circle and had it serviced at both Golden Circle and SMF. (*Id.* at ¶¶ 8-11.) On July 22, 2015, Ford filed a notice of removal of the case to this Court. (D.E. 1.) Subject matter jurisdiction for removal was based upon diversity of

1

citizenship pursuant to Title 28, section 1332(a)(1) of the United States Code. (*Id.* at 4.) In its notice, Ford stated that although Plaintiff is a Tennessee resident and Defendants, Golden Circle and SMF, are Tennessee corporations, complete diversity existed because those two non-diverse defendants were fraudulently joined and therefore their citizenship should be disregarded.[1] (*Id.*) Jackson initially failed to address Defendant's removal or fraudulent joinder allegation. The Court then instructed Plaintiff to submit a brief on the issue of fraudulent joinder to assist it in determining whether it possessed jurisdiction over the instant matter.[2] (D.E. 39.) For the following reasons, the Court finds that Defendants, Golden Circle and SMF, are fraudulently joined and, therefore, are DISMISSED.

*Law*

In a removal case, it is a well-established principle of law that "[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004); *see also Nahabedian*, 556 F. App'x at 391. When considering the issue of fraudulent joinder, if an amended complaint is filed after removal, the court should still utilize the complaint that was operative at the time of removal. *CPC Livestock, LLC v. Fifth Third Bank, Inc.*, 495 B.R. 332, 340 (W.D. Ky. 2013) ("[T]he First Amended Complaint was operative at the time of removal. Accordingly, the Court will consider it determining whether subject matter jurisdiction exists," rather than the Second Amended Complaint.).

---

[1] Ford is considered a citizen of the states of Delaware (place of incorporation) and Michigan (principal place of business) for diversity purposes. (D.E. 1 at 4.)

[2] The "existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *Nahabedian v. OneWest Band, FSB*, 556 F. App'x 389, 391 (6th Cir. 2014).

2

The Sixth Circuit has recognized that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Nevertheless, "the party removing the case must establish that the joinder was a subterfuge." *Westbrook v. Kindred Healthcare, Inc.*, No. 05-2118 B, 2005 WL 2373421, at *2 (W.D. Tenn. Sept. 26, 2005); *see also Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493. "There can be no fraudulent joinder unless it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). A plaintiff's motive in joining non-diverse defendants is immaterial to the determination of whether joinder was fraudulent. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)

If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then remand is appropriate. *Id.*; *see also Coyne,* 183 F.3d at 493 (stating that a "colorable basis for predicting that a plaintiff may recover against non-diverse defendants" requires remand); *Jerome-Duncan, Inc.*, 176 F.3d at 907 ("the inquiry is whether [plaintiff] had at least a colorable cause of action against [the defendant]"). "[A]ny disputed questions and facts and ambiguities in the *controlling* state law [should be resolved] . . . in favor of the nonremoving party." *Alexander*, 13 F.3d at 949. "If the court determines that the non-diverse defendant has been fraudulently joined, the remedy is to dismiss the claims against [it]." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d. 590, 595 (E.D. Ky. 2011). Because the Plaintiff has claimed that the non-diverse Defendants are liable under Tennessee

law, the Court must look to the law of that state to determine whether they were appropriately included. *See Jerome-Duncan, Inc.*, 176 F.3d at 907 (applying Michigan state law to ascertain whether the defendant was properly joined).

*Analysis*

In Plaintiff's original complaint, which was operative at the time of removal, she included ten allegations against Golden Circle and SMF. (D.E. 1-2 at ¶¶ 105-141.) The first nine counts fall under the purview of the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101 to -108 (2015) ("TPLA"). The TPLA defines a product liability claim as any action:

> brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn. Code Ann. § 29-28-102(6). Counts one through nine assert the following: strict liability for manufacturing defects; strict liability for design defects; strict liability for defective warnings; negligent manufacturing; negligent design; negligent warnings; misrepresentation; breach of implied warranty; and breach of express warranty. (D.E. 1-2 at ¶¶ 105-141.) Each of these issues is covered by the TPLA. Under the Act, a products liability action *must* be maintained against the manufacturer, not against a non-manufacturer seller, unless one of the following statutory exceptions is met:

> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;

(2) [The seller] [a]ltered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;

(3) The seller gave an express warranty as defined by title 47, chapter 2;

(4) The manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or

(5) The manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106. "Manufacturer means the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." *Id.* at § 29-28-102(4). Seller is defined as "a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." *Id.* at § 29-28-102(7).

Plaintiff identified Ford as the manufacturer of the vehicle at issue. (D.E. 1-2 at ¶ 7. "Defendant, Ford, developed, designed, manufactured, assembled, marketed, distributed and sold" the Ford Focus Plaintiff bought.) Golden Circle is a non-manufacturer seller from which Daniel Jackson purchased the vehicle and where he had it serviced. (*Id.* at ¶ 8.) SMF only serviced the Focus. (*Id.* at ¶ 11.) Nowhere in her pleadings does Plaintiff allege any of the statutory exceptions that would render either Golden Circle or SMF liable under the TPLA. *See Alexander*, 13 F.3d at 949 ("There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law."). As the statute precludes suits against any seller unless an exception is met, neither Golden Circle nor SMF could be held responsible under the TPLA. *See Morris v. Gen. Motors, LLC*, No. 3:15-cv-00239, 2015 WL 6442611, at *2 (M.D. Tenn. Oct. 23, 2015) ("The seller's immunity law, codified at Tenn. Code Ann. § 29-28-106, precludes product liability actions against sellers except in certain circumstances.").

Additionally, Plaintiff averred in count ten of her complaint that Golden Circle and SMF were negligent in failing to "properly diagnose and repair the defects in [the deceased]'s 2012 Ford Focus" and in failing "to warn [the deceased] that the defects existed and had not been repaired." (D.E. 1-2 at ¶ 11.) While both Golden Circle and SMF serviced and made repairs on the car's transmission, Plaintiff maintains that it was a defective Electronic Power Assisted Steering ("EPAS") system that "was the cause" the accident. (*Id.* at ¶ 16.) Neither Defendant, however, worked on the EPAS system, nor did Plaintiff claim their repairs affected the system. (*See id.* at ¶ 10-11.) Jackson's negligent repair claim provides no causal connection between the repair services rendered by these Defendants and the EPAS system. Thus, neither non-diverse Defendant would be liable under Tennessee law for negligent repair of the product which Plaintiff insists caused the death of Daniel Jackson.

Plaintiff urges the Court to also take into account the allegations in her amended complaint, which was filed almost two months after removal. (D.E. 36.) Although it is well-established that the complaint that is operative at the time of removal is the basis for subject matter jurisdiction, the Sixth Circuit has held that a district court may "pierce the pleadings to consider summary-judgment-type evidence (such as depositions, affidavits, ect.)" when considering the issue of fraudulent joinder. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). The "proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss," rather than a Rule 56 motion. *Id.* In *Walker*, the Sixth Circuit found that the district court erred in denying remand after considering fraudulent joinder because "[i]t [was] not disputed that Plaintiffs stated a colorable claim against the [non-diverse] Defendants," and the trial court went "beyond the relevant inquiry—whether the Plaintiffs have a colorable claim under [state] law—and instead inquired whether Plaintiffs had adequate

6

evidentiary support for their claim, the traditional Rule 56 inquiry." *Id.* at 955-56. After "piercing the pleadings" and considering the underlying affidavits, the Sixth Court found that a colorable claim existed, and, therefore, the non-diverse defendants were properly joined. *Id.*

In the instant matter, Plaintiff is only requesting that the Court review the additional allegations in her amended complaint, rather than pierce the pleadings to examine any summary judgment type evidence. Nevertheless, even taking into consideration the new allegations, Plaintiff's argument fails. In her amended complaint, Jackson contends that "the vehicle's transmission shifted from drive to first gear." (D.E. 36 at ¶ 16.) She still asserts, however, that "[t]he EPAS system was the cause of the Plaintiff's vehicle darting left into oncoming traffic," resulting in the accident. (*Id.*) Jackson blames the steering mechanism in the vehicle—the EPAS system—as the cause and uses a significant amount of the amended complaint discussing it. (*See* D.E. 36 at ¶¶ 17-21, 44-93.) Although she alleges that "the defective transmission was a cause or contributing factor to the accident," Plaintiff has provided no facts to the Court connecting the transmission's deficiency to faulty steering or how the transmission would have contributed to the accident. (*See id.* at ¶ 16) Jackson specifically contends that the defective EPAS system caused her husband's demise. (*Id.*) Plaintiff never asserted that either dealership worked on the steering or that their repairs impacted the steering or EPAS system. Therefore, the negligent repair claim in the amended complaint provides no relationship between the repair services and the EPAS system. Thus, neither Defendant could be liable under Tennessee law for negligent repair.

*Conclusion*

Based on the foregoing, the Court finds that Plaintiff has presented no colorable claim of liability against Golden Circle and SMF under Tennessee law. As such, both Defendants were fraudulently joined and are DISMISSED. Defendants' pending motions for judgment on the pleadings (D.E. 13, 14) are therefore rendered moot and are DENIED.

IT IS SO ORDERED this 21st day of January 2016.

s/ J. DANIEL BREEN_____
CHIEF UNITED STATES DISTRICT JUDGE