IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VICTORIA A. JACKSON, individually,
and as Surviving Wife of DANIEL A.
JACKSON, Deceased,

    Plaintiff,

v.                                                                                            No. 15-1180

FORD MOTOR COMPANY,
GOLDEN CIRCLE FORD, LINCOLN,
MERCURY, INC., and STEVE MARSH
FORD, INC.,

    Defendants.

_____

ORDER GRANTING DEFENDANT
FORD MOTOR COMPANY'S
MOTION TO DISMISS
_____

On May 20, 2015, Plaintiff, Victoria A. Jackson, as surviving spouse of Daniel A. Jackson, deceased, filed suit against Defendants, Ford Motor Company ("Ford"), Golden Circle Ford, Lincoln, Mercury, Inc. ("Golden Circle"), and Steve Marsh Ford, Inc. ("SMF"), in Benton County (Tennessee) Circuit Court for claims arising out of an automobile accident. (Docket Entry ("D.E.") 1-2.) Daniel Jackson's car, without warning, veered left into oncoming traffic, causing a collision which resulted in his death. (*Id.* at ¶ 14.) Plaintiff alleges that the accident was due to a defect in the Ford Focus, manufactured by Ford, that the deceased was operating. (*Id.* at ¶ 16.) The decedent purchased the vehicle from Golden Circle and had it serviced at both Golden Circle and SMF. (*Id.* at ¶¶ 8-11.) On July 22, 2015, Ford timely filed a notice of removal. (D.E. 1.) Two days later, Ford moved to dismiss the claims against it, or in the

1

alternative, for a more definite statement. (D.E. 15.) For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

I. Standard of Review

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) instructs that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) requires that the Court "accept all material allegations as true and construe them in the light most favorable to the non-moving party." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court delineated a two-prong test for analyzing 12(b)(6) motions. First, the reviewing court should consider what allegations are merely "legal conclusions" and disregard them when ruling on the motion. *Id.* at 678. Second, the court should evaluate the remaining well-pleaded facts and determine whether they give rise to a "plausible claim for relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## II. Legal Analysis

### A. Counts 1-6

In cases based upon diversity, federal courts apply the law of the state in which the action is brought. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006). In this lawsuit, Tennessee law applies. Plaintiff's complaint alleges nine causes of action, all governed by the Tennessee Products Liability Act of 1978 ("TPLA"), codified at Tennessee Code Annotated section 29-28-101 to -108. The statute applies to "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29–28–102(6); *see also Vaughn v. DP Packaging, Inc.*, 17 F. App'x 286, 289 (6th Cir. 2001); *Richardson*, 412 F. Supp. 2d at 868. Such actions include, but are not limited to,

> all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

Tenn. Code Ann. § 29-28-102(6).

Counts one through six assert the following: strict liability for manufacturing defects; strict liability for design defects; strict liability for defective warnings; negligent manufacturing; negligent design; and negligent warnings. (D.E. 32 at ¶¶ 105-129.) Under the TPLA, the

3

manufacturer of a product may be liable for injuries "caused by the product" shown to have been "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a); *see also Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000), *reh'g and suggestion for reh'g en banc denied* (Sept. 14, 2000). Pursuant to Tennessee law, establishing a prima facie products liability claim requires that "the plaintiff . . . show: (1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 423 F.3d 469, 483 (6th Cir. 2008). To be proximate, the cause "must be such that had it not happened the injury would not have been inflicted." *Shouse v. Otis*, 448 S.W.2d 673, 676 (1969). "As Tennessee courts [have made] clear, it is not enough that Plaintiff suffered injuries from using . . . a product. . . . The relevant question is not whether the [product] caused her pain; the issue is whether the alleged *design defect* . . . of the [product] caused her pain." *Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 970-71 (E.D. Tenn. 2010). "[U]nless there is a showing that the particular defect or dangerous condition proximately caused the plaintiff's injury, the manufacturer is not liable." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000).

Jackson has asserted that the Electronic Power Assistant Steering ("EPAS") system was defective and the cause of the accident.[1] (D.E. 36 at ¶¶ 16, 17, 26, 104.) Defendant concedes that "Plaintiff [has] pled factual matter suggesting that the Focus has certain defects." (D.E. 15-1 at 7.) Ford argues, however, that Jackson failed to appropriately address the causation

---

[1] Plaintiff also claims that the transmission was defective because it "shifted from drive to first gear." (D.E. 36 at ¶ 16.) However, other than simply stating that the transmission malfunctioned, Jackson provided no facts supporting this allegation or linking the alleged faulty transmission to the defective EPAS system. Without more, this allegation has not been pled with the specificity required by *Twombly/Iqbal*. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions").

requirement, and that all of her related allegations are "precisely the sort of labels and conclusions or a formulaic recitation of the elements of a cause of action proscribed by *Twombly* and *Iqbal*." (*Id.* at 7-8.) In response, Plaintiff points to twelve paragraphs in her amended complaint that she alleges properly plead the causation issue. (D.E. 27 at 3.) However, all of these paragraphs serve as conclusory statements regarding proximate cause. Each of the ones Plaintiff highlighted simply state, in some form, that the defective steering apparatus "was the proximate cause of the injuries." (D.E. 36 at ¶¶ 107, 110, 118, 129.) Although Jackson discussed at length the EPAS system in the Ford Focus and many other vehicles produced by Ford, she failed to explain how any of the alleged defects in the system caused Daniel Jackson's car to suddenly veer into another lane of oncoming traffic. (D.E. 36 at ¶¶ 14.) Indeed, while Plaintiff insisted that numerous deficiencies exist with the Ford Focus in general, nowhere in her complaint or amended complaint does she specify what specific flaw caused the accident in question. Without the required showing of how a "particular defect . . . proximately caused the plaintiff's injury, the manufacturer is not liable." *King*, 37 S.W.3d at 435. Therefore, Defendant's motion to dismiss with respect to these claims is GRANTED.

B. Count 7

Plaintiff further asserts Ford engaged in misrepresentation of "material fact[s] concerning the character, quality and operation and safety of the Ford Focus." (D.E. 36 at ¶ 130.) This claim is also governed by the TPLA. *See* Tenn. Code Ann. § 29-28-102(6). The pleading requirements for misrepresentation are governed by Federal Rule of Civil Procedure 9, as it is a claim based in fraud. *See Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012). Rule 9 invokes a heightened pleading standard and "requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when

and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.* at 247. Although Plaintiff cited to four short quotes from old national advertising materials, she failed to "identify the speaker," "plead when and where the statements were made," or "explain what made the statements fraudulent." Jackson blamed "the shear (*sic*) size and extent of Ford's marketing campaign" as to why she failed to "list all of the specific statements made by Ford" and vowed "to make specific requests in discovery." (D.E. 31 at 4.) Plaintiff never addressed, however, her initial failure to plead the misrepresentation claim in either her initial complaint or amended complaint with the specificity Rule 9 requires. As such, Defendant's motion to dismiss with respect to this claim is GRANTED.

C. Count 8

Next, Jackson contends that Ford breached an implied warranty of merchantability and fitness under the TPLA. (D.E. 36 at ¶¶ 132-133.) *See* Tenn. Code Ann. § 29-28-102(6). Tennessee Code Annotated section 47-2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The "rule requiring privity of contract between the parties as an essential element of implied warranty still exists in Tennessee." *Americoach Tours, Inc. v. Detriot Diesel Corp.*, No. 04-2016B/V, 2005 WL 2335369, at *7 (W.D. Tenn. Sept. 23, 2005) (quoting *Leach v. Wiles*, 429 S.W.2d 823, 832 (Tenn. Ct. App. 1968)). However, "privity is not required to bring an action for breach of implied warranty when an unreasonably dangerous product has caused property damage or personal injury." *Id.* at *6. As discussed *supra*, Plaintiff failed to demonstrate that the alleged defect in the vehicle was the proximate cause of the accident and her husband's death. Therefore, privity of contract would need to exist between Daniel Jackson and Ford to give rise to a claim of breach of implied warranty. Plaintiff averred that the vehicle was

purchased from Golden Circle. (D.E. 36 at ¶ 8.) Jackson failed to assert that either she or Daniel Jackson entered into a contract for the purchase of a vehicle with Ford. Thus, no privity of contract existed. As such, Defendant's motion to dismiss with respect to this claim is also GRANTED.

D. Count 9

Plaintiff's final allegation against Ford is for breach of express warranty. (D.E. 36 at ¶¶ 136-39.) This claim is likewise governed by the TPLA. *See* Tenn. Code Ann. § 29-28-102(6).

> In order to establish a *prima facie* claim for breach of express warranty, a plaintiff must prove that: (1) [s]eller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) [b]uyer was in fact induced by the seller's acts; and (3) [t]he affirmation of fact was false regardless of the seller's knowledge of the falsity of intention to create a warranty.

*Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006-01723-COA-R3-CV, 2007 WL 2198230, at *7 (Tenn. Ct. App. July 26, 2007); *see also Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002). Tennessee Code Annotated section 47-2-313(2) clarifies that "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Although Plaintiff pointed to brief quotes from Ford's advertising campaign, she does not provide any basis as to why the ads were not simply a "commendation of the goods." "Drawing a line between puffing and the creation of an express warranty is . . . difficult, but several helpful factors have been identified in making such a determination." *Winngingham v. Timber Prods. Corp. of Oneida, Tenn.*, 1990 WL 14567, at *4 (Tenn. Ct. App. Feb. 21, 1990). Indeed, "the specificity of the statement made" is one such factor. *Id.* For example, Tennessee courts have noted that statements such as "this is a top notch car is a general statement and is less likely to create an express warranty." *Id.* Further, "[a]nother factor to be considered in determining whether a statement creates an express

7

warranty is whether it was written or oral, the latter being more likely to be considered puffing."  *Id.*  Plaintiff quotes marketing material from Ford such as the "EPAS is a demonstrative example of technology" and it [help[s] drivers stay connected, safer, [and] less stressed." (D.E. 36 at ¶ 23.)  Jackson failed to identity any statement—oral or written—that is more than only a general statement similar to what Tennessee courts have previously rejected.  *See Winningham*, 1990 WL 14567, at *4 (statements such as "this is a top notch car" and "a motor vehicle [is] excellent and in mint condition" are "general in nature and fail[] to rise to the level of an express warranty"); *see also Xerox Corp. v. Digital Express Graphic, LLC*, No. M2006-02339-COA-R3-CV, 2008 WL 2278492, at *8 (Tenn. Ct. App. May 22, 2008) (the statement that "Xerox had and still continues to advertise this machine as color consistent, reliable, etc. . . . did not rise to the level of specificity required" to create an express warranty).  Moreover, while Jackson alleged her husband purchased the Focus and relied "on affirmative representations from Ford," she failed to include any of these alleged affirmations of fact.  In her response to Defendant motion to dismiss, Jackson again blamed "the shear (*sic*) size and extent of Ford's marketing campaign" as to why she did not "list all of the specific statements made by Ford" but vowed "to make specific requests in discovery." (D.E. 31 at 3-4.)  Nevertheless, her argument does not excuse her failure to sufficiently plead this claim.  Therefore, Defendant's motion to dismiss the allegation of breach of express warranty is GRANTED.

III.  Conclusion

Based upon the foregoing reasons, Defendant's motion to dismiss is GRANTED.

IT IS SO ORDERED this 26th day of January 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE